Hon. Jill M. Considine Superintendent of Banks State of New York Banking Department
Your counsel has requested our opinion as to whether telegraph companies are exempt from being licensed as money transmitters under the provisions of section 641(1) of the Banking Law.
Section 641 provides that any persons engaged in the business of "receiving money for transmission or transmitting the same" must be licensed by the Superintendent of Banks, as provided for in article XIII-B of the Banking Law (Banking Law, § 641[1]). Applications for licenses must be accompanied by an initial investigation fee of $1,000 and an annual license fee of $500 (id., §§ 641[3], 642[4]).
In addition, section 641 contains several exemptions from the licensing requirement. For example, banks, savings banks, trust companies, savings and loan associations and national banking associations are all exempt from the licensing requirement, even though they may receive and transmit money (id., § 641[1]).
Section 641 also contains an exemption for
 "a telegraph company rendering a public message telegram service and having net assets of at least seven hundred fifty thousand dollars as shown in the last annual report of said telegraph company filed with the public service commission pursuant to section ninety-five of the public service law . . ." (ibid.).
It is this exemption which gives rise to your inquiry. At the time section 641 was enacted, telegraph companies were required under section95 of the Public Service Law to file an annual report with the Public Service Commission. In 1981, the Public Service Law was amended so as to deregulate unconditionally telegraphic communication for a period of one year (Public Service Law, § 90[2]; L 1981, ch 414). The Public Service Commission was granted the option to regulate the industry following the one-year period, if it found there was a lack of effective competition (ibid.).* Since that time, the Commission has not regulated the telegraphic communication industry, and telegraph companies are no longer required to file annual reports under section 95
of the Public Service Law. Indeed, counsel's office at the PSC informs us that annual reports are no longer accepted for filing and would not be accepted if tendered.** Assuming that a telegraph company engages in the type of transmissions governed by article XIII-B of the Banking Law, the question presented is whether they must now comply with that article's licensing provisions.
For the following reasons, we conclude that telegraph companies no longer qualify for the exemption from the licensing requirement. Telegraph companies are no longer required or permitted to file annual reports with the Public Service Commission. The telegraph company, therefore, does not fall within the language of the statute which grants an exemption to telegraph companies whose assets exceed $750,000 "as shown in the last annual report of said telegraph company filed with the public service commission pursuant to section ninety-five of the public service law" (Banking Law, § 641[1]).
We believe the reference to the report on file with the PSC is a significant aspect of the exemption and not merely a ministerial convenience. The terms of the statutory exemption do not merely require the telegraph company to prove that it has assets of over $750,000, but requires that it make that showing in a particular way: by reference to the annual report on file with the administrative agency which oversees the telegraph and telecommunication industry. That filing no longer takes place, and inasmuch as it was a significant aspect of the exemption, the exemption can no longer apply.
Furthermore, we do not believe reports on file prior to the deregulation would satisfy that part of the statute which refers to "the last annual report". The last annual report filed with the PSC is now over five years old, and the Legislature could not have intended such an obsolete financial document to serve as the basis for an exemption of a previously carefully regulated industry. The more reasonable view is to read the language as a reference to the annual report currently on file with the PSC. There being no such report in the aftermath of deregulation, the telegraph company cannot qualify for the exemption.
It is apparent that in the absence of the exemption set forth in section 641, telegraph companies are subject to licensing by the Banking Department. Moreover, the Public Service Commission's regulatory jurisdiction is separate and distinct from that exercised by the Banking Department (see Legislative Bill Jacket, L 1981, ch 414, § 1). Deregulation by the Public Service Commission, therefore, has no impact on the authority of the Banking Department to regulate money transmission under section 641.* In the absence of any legislative intent indicating otherwise, the plain language of the statute, which does not allow for the exemption, must control.
Telegraph companies who transmit funds are no longer exempt from the licensing requirements of the Banking Law.
* Subdivision 2 of section 90 was added by chapter 414 of the Laws of 1981, and provides as follows:
 "2. Application of the provisions of this article to telegraphic communication is suspended unless the commission, no sooner than one year after the effective date of this provision, makes a determination, after notice and hearing, that regulation of a telegraph corporation or some of its services should be reinstituted to the extent found necessary to protect the public interest because of a lack of effective competition."
** In a 1985 order, the PSC waived the filing requirement for Western Union's (the telegraph company which is the subject of your request) telecommunications operation, at Western Union's request (see 16 NYCRR § 641; PSC Certificate of Public Convenience and Necessity, August 22, 1985).
* Section 641 seeks to protect persons who do business with money transmitters by ensuring the solvency of the financial institution providing the money transmitting service.
 "While the business sought to be brought under Banking Department supervision has not, to the knowledge of the Department, been subject in recent years to abuses in this state, such business as conducted in several other states has led to losses by the public by reason of fraud or insolvency on the part of transmitters of funds. To guard against such possible experience in this state is the prime purpose of the proposed bill" (L 1963, ch 1000, Legislative Bill Jacket, Banking Department Memorandum, p 15).